## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **KIETH HILLIGOSS AND CULLAS WEBB,** | ) | |
| | ) | |
| | ) | |
| **Individually, Successor Co-Trustees and Beneficiaries of The Leonard and Opal Hilligoss Revocable Trust,** | ) ) ) | |
| | ) | |
| **INTERPLEADER PLAINTIFFS,** | ) | |
| | ) | |
| **vs.** | ) | **Case No: CIV-10-1001-A** |
| | ) | |
| **WILLIAM RAY ROBERTSON, an Individual;** | ) ) | |
| | ) | |
| **AND** | ) | |
| | ) | |
| **JOHN PAUL HILLIGOSS, an Individual,** | ) ) | |
| | ) | |
| **INTERPLEADER DEFENDANTS.** | ) | |

## MEMORANDUM OPINION

This interpleader action was brought by Interpleader Plaintiff Keith[1] Hilligoss and

Cullas Webb as co-trustees (Trustees) of The Leonard and Opal Hilligoss Revocable Trust

(Trust). Thereafter, in accordance with the provisions of 28 U.S.C. § 636(c), the parties

waived their right to proceed before a United States district judge and consented to have the

undersigned United States Magistrate Judge conduct any and all proceedings in the case

(including the trial) and order the entry of judgment.

---

[1]Although "Kieth" is the spelling used by the parties in the caption, the trust instrument uses the traditional spelling of "Keith," and so that spelling has been adopted herein.

Interpleader-Defendant John Paul Hilligoss (Defendant Hilligoss) has filed a motion for summary judgment, or in the alternative, a motion to certify question to the Oklahoma Supreme Court regarding whether he is entitled to a portion of Donna Hilligoss' distributive share of the Trust.   Although Interpleader-Defendant William Ray Robertson (Defendant Robertson) initially failed to respond to the motion, the Court found that his response was essential to the proper disposition of the pending motion and so directed him to do so. That response has now been filed.

## I.  JURISDICTION

Although no party has raised any question as to whether the Court has subject matter jurisdiction, a federal court has an independent obligation to assess its own jurisdiction at any time.  Thomas v. Metro. Life Ins. Co., 631 F.3d 1153, 1158–59 (10th Cir.2011).   In the "Amended Petition," the governing pleading, Plaintiff Interpleaders allege that each "resides" in Oklahoma and that the Trust is a citizen of Oklahoma.[2]  Amended Petition, 1. Interpleader Plaintiffs further allege that Interpleader-Defendant Robertson is a citizen of the State of Kansas, and that Interpleader-Defendant Hilligoss is a citizen of the State of Oklahoma. They go on to describe the jurisdictional basis as follows: "This Court has original subject matter jurisdiction over this interpleader action and plea for declaratory relief pursuant to

---

[2]The Court notes that generally it is not the trust but the *active trustees* who control assets held in their names whose citizenship must be considered in determining if there is diversity of citizenship in a case involving a trust.  See Lenon v. St. Paul Mercury Ins. Co., 136 F.3d 1365, 1370-71 (10th Cir. 1998).  However, as will be discussed below, the Court has determined that the adverse parties to this action – the Interpleader Defendants – are of diverse citizenship and such is enough to support statutory interpleader jurisdiction.

Fed.R.Civ.P. 22  (Rule Interpleader).  Jurisdiction is conferred under 28 U.S.C. § 1332 by the *partial diversity* of the parties and the amount in controversy." Amended Petition, 2 (emphasis added).

Because the jurisdictional allegations in the Amended Petition would not appear to support complete diversity as required by 28 U.S.C. § 1332–and which is also required for a Rule 22 (Rule Interpleader) action based on diversity–an independent review of the Court's jurisdiction has been undertaken. The Court concludes that because the factual allegations do support statutory interpleader jurisdiction under 28 U.S.C. § 1335 (Statutory Interpleader), it concludes that the Court does have subject matter jurisdiction over this matter.

Interpleader actions can be brought in federal court via two mechanisms.  The first is Statutory Interpleader:

> (a) *The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more*, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, *if*
>
> (1) *Two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property,* or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; *and if (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court*, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the

plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

28 U.S.C. § 1335 (emphasis added). On the other hand Rule Interpleader under Fed.R.Civ.P.

22 has different requirements:

(a) Grounds.

(1) By a Plaintiff. Persons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead. Joinder for interpleader is proper even though:

(A) the claims of the several claimants, or the titles on which their claims depend, lack a common origin or are adverse and independent rather than identical; or

(B) the plaintiff denies liability in whole or in part to any or all of the claimants.

(2) By a Defendant. A defendant exposed to similar liability may seek interpleader through a crossclaim or counterclaim.

(b) Relation to Other Rules and Statutes. This rule supplements--and does not limit--the joinder of parties allowed by Rule 20. *The remedy this rule provides is in addition to--and does not supersede or limit--the remedy provided by 28 U.S.C. §§ 1335, 1397, and 2361. An action under those statutes must be conducted under these rules.*

Fed.R.Civ.P. 22 (emphasis added). Thus, the determination as to whether a court has subject

matter jurisdiction over an interpleader action depends on the interpleader mechanism.  As

stated in Federal Practice and Procedure:

Rule and statutory interpleader are treated differently for purposes of determining whether the court has subject-matter jurisdiction. The basis for the court's jurisdiction in actions under the interpleader statute is diversity of citizenship between the claimants. This is prescribed by Section 1335 of Title 28, which states:

> The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, … having in his or its custody or possession money or property of the value of $500 or more, … *if (1) Two or more adverse claimants, of diverse citizenship as defined in section 1332 of this title, are claiming or may claim to be entitled to such money or property* ….

> *Interpleader actions under Rule 22(1) … must be based upon the general jurisdiction statutes applicable to civil actions in the federal courts. These provisions require the existence of a federal question or complete diversity of citizenship between the plaintiff-stakeholder and the defendant-claimants, and, in diversity actions, an amount in controversy in excess of $75,000* exclusive of interest and costs. Thus, contrary to statutory-interpleader actions, the absence of diversity of citizenship among the claimants is irrelevant in rule-interpleader cases. Supplemental jurisdiction also may be possible if the interpleader claim is attached to an otherwise jurisdictionally sufficient related claim.

7 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, & Richard L. Marcus, Federal Practice and Procedure, § 1710 (3d ed. 2011) (emphasis added).

Although the factual allegations clearly support Statutory Interpleader jurisdiction, Plaintiff Interpleaders cited Fed.R.Civ.P. 22 and the general diversity jurisdiction statute as authority rather than 28 U.S.C. § 1335. Nonetheless, the allegations in the Amended Petition contain all factual allegations necessary to support Statutory Interpleader jurisdiction, including diversity between the adverse claimants.  Additionally, as required, the disputed funds have been deposited into the registry of the Court, and there has been no objection to jurisdiction despite Interpleader Plaintiffs' citation to Rule 22 and the general diversity statute rather than 28 U.S.C. § 1335. Finally, Fed.R.Civ.P. 22 clearly provides that it is in addition to "and does not supersede or limit–the remedy provided by 28 U.S.C. § 1335."

Accordingly, the Court finds that subject matter jurisdiction has been established.

## II. GOVERNING LAW

This dispute is governed by the substantive law of Oklahoma. First, the Trust specifically states: "This trust is to be administered and settled as a trust and under the trust laws of Oklahoma." Trust, 3. Second, a "federal court sitting in diversity must apply the law of the forum state, in this case Oklahoma, and thus must ascertain and apply Oklahoma law with the objective that the result obtained in the federal court should be the result that would be reached in an Oklahoma court." Wood v. Eli Lilly & Co., 38 F.3d 510, 512 (10th Cir.1994). In this respect, the Court is obligated to apply Oklahoma law as "announced by that state's highest court." Hays v. Jackson National Life Ins. Co., 105 F.3d 583, 587 (10th Cir.1997); accord Blanke v. Alexander, 152 F.3d 1224, 1228 (10th Cir. 1998).

## III. BACKGROUND

The Interpleader Plaintiffs are co-trustees of a trust established and governed under the laws of the State of Oklahoma. Amended Petition for Interpleader and Declaratory Relief (Amended Petition[3]), 1. Interpleader Defendant Hilligoss is a citizen of the State of Oklahoma, and Interpleader Defendant Robertson is a citizen of the State of Kansas. Amended Petition, 2. According to the Trust's terms, the Grantors of the trust, Opal and Leonard Hilligoss, were to serve as trustees and sole beneficiaries of the Trust until their

---

[3]Although the pleading should be denominated as a "complaint" rather than a "petition," the Court has used the same nomenclature adopted by the Interpleader Plaintiffs in order to avoid confusion.

death or disability. Amended Petition, 4.

Opal Hilligoss died on September 14, 2004, leaving Leonard Hilligoss as the sole trustee and beneficiary of the Trust. Amended Petition, 4. Grantor Leonard Hilligoss thereafter died, leaving the Plaintiff Interpleaders, Keith Samuel Hilligoss, Sr. and Cullas Webb as the successor co-trustees. Interpleader Defendant Robertson's Response, 2, Interpleader Defendant Hilligoss' Motion for Summary Judgment ¶ 5.[4]

In September of 2010, the Trustees elected to make a substantial distribution of Trust properties to the beneficiaries of the Trust. Amended Petition, 4. One of the named beneficiaries of the Trust, Donna Hilligoss Robertson (Donna), was deceased by the time she became entitled to her distributive share of the Trust. Amended Petition, 4. By the express terms of the Trust, Donna's lineal heirs were therefore entitled to her distributive share. Donna had two children: one natural child, William Ray Robertson, and one child by adoption, John Paul Hilligoss. Amended Petition, 4-5. John Paul Hilligoss was later adopted by Donna Hilligoss' mother, Jonell Hilligoss. Amended Petition, 3. Jonell Hilligoss is the surviving spouse of V.P. Hilligoss, and Jonell is not referenced in the Trust as a beneficiary.

---

[4]In the Amended Petition, Interpleader Plaintiffs alleged that Grantor Leonard Hilligoss was declared incompetent on February 4, 2005. Amended Petition, ¶ 15. However, the motion for summary judgment of Interpleader Defendant Hilligoss and the response thereto both state that Grantor Leonard Hilligoss is deceased. Thus, the Court finds this fact to be uncontroverted. Moreover, the event whereby the Trustees entered into office is irrelevant to the issues presented in this action, so to the extent there is any conflict such is immaterial. Finally, an online obituary published by Phillips Funeral Service states that a Leonard Hilligoss died on June 13, 2010. http://www.phillipsfuneralservice.com/PastObituary.aspx?did=b86b6970-0eef-4bab-b882-95ba4 7bd5df9 (accessed April 4, 2012). This online obituary mentions that this Mr. Hilligoss was predeceased by his wife, Opal, and two brothers, Verlin "Pete" Hilligoss and Orvan Hilligoss, which is consistent with the information contained in the Trust.

Amended Petition, 3.  However, Donna Hilligoss, Diana Hilligoss, and Johnny Hilligoss, identified as the children of "deceased brother V.P. Hilligoss," are specifically named as heirs. Amended Petition, 3.

After the Trustees elected to make a distribution of Trust properties, they learned that both Interpleader Defendants-John Paul Hilligoss and William Ray Robertson- expressed a legal and/or equitable claim to Donna's distributive share of the Trust. Accordingly, the Trustees brought this action for declaratory relief, deposited the distributive share allocated to Donna into the registry of the Court, and are prepared to surrender those funds to whom the Court finds is/are entitled to the distributive share (contingent upon proper execution of a Release and Acknowledgment as required by the Trust). Amended Petition, 5; Doc. No. 27. An agreed order for final judgment granting discharge, permanent injunction against further litigation, and an award of attorney's fees and costs has been entered in favor of the Interpleader Plaintiffs.  [Doc. No. 34].

## IV.  STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Summary judgment may be granted only where the pleadings and any supporting documentary materials show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In considering a motion for summary judgment, the court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party.  Calhoun v. Gaines, 982 F.2d 1470, 1472 (10th Cir. 1992); Manders v. Oklahoma ex. rel. Department of Mental Health, 875 F.2d 263, 264 (10th Cir. 1989).  A dispute is "genuine," when viewed in this light, if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are "facts that might affect the outcome of the suit under the governing law." Id.

To obtain summary judgment, the moving party need not affirmatively negate the nonmovant's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Rather, the moving party initially bears the burden only of " 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has satisfied this burden, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. Id. at 324. The nonmoving party "may not rest upon mere allegation" in his pleading to satisfy this requirement. Anderson, 477 U.S. at 256. Rather, Federal Rule of Civil Procedure 56 "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (internal quotation marks omitted).

## V.  UNDISPUTED FACTS

In his response to the motion for summary judgment, Interpleader Defendant Robertson states that he agrees with the statement of material facts as presented by Interpleader Defendant Hilligoss with the exception of Hilligoss' statement that the Trust is currently holding the distributive share of Donna Hilligoss.[5] Accordingly, the Court finds the

---

[5]The Trust has since deposited the distributive share of Donna Hilligoss into the Court's registry. [Doc. Nos. 27, 33].

following facts to be undisputed.

1. On October 10, 2003, Leonard Hilligoss and Opal Hilligoss ( "Leonard," "Opal,"
or cumulatively "Grantors") executed their Revocable Living Trust Agreement. Each was
an initial Co-Trustee. (Amended Petition[6] ¶ 7).

2. Grantors had no natural born children, and divided their mutual estate, upon the
occurrence of the second of them to die, into two equal halves for distribution to their
respective, expressly designated, non-lineal heirs. (Amended Petition ¶ 8).

3. Grantors served as Trustees until death or disability, and as the sole beneficiaries
until the death of Leonard Hilligoss. (Amended Petition ¶ 13).

4. Grantor Opal Hilligoss died on September 14, 2004, leaving Leonard Hilligoss as
the sole Trustee and sole beneficiary of the Trust. (Amended Petition ¶ 14).

5. Grantor Leonard Hilligoss is also now deceased.   Interpleader Defendant
Hilligoss' Motion for Summary Judgment ¶ 5 Interpleader Defendant Robertson's Response,
2.

6. Leonard Hilligoss' heirs, the subject of 50% of the Trust assets, included by name,
in various percentages: "The heirs of Leonard Hilligoss are: Ronald William Hilligoss, Jerry
D. Hilligoss, Linda LaVerne Bartlett, Orvan William Hilligoss, Jr., Keith Samuel Hilligoss,

---

[6]In his statement of undisputed material facts, Interpleader Defendant Hilligoss repeatedly
cites to the "Petition." However, at the direction of Judge Friot, the Interpleader Plaintiffs filed an
"Amended Petition" that included allegations of citizenship necessary to support the Court's
diversity jurisdiction. In considering the pending motion, the Court has compared the facts cited to
the "Petition" to those in the "Amended Petition" and find they are the same. Accordingly, the Court
has treated the citation to the "Petition" as a scrivener's error and has instead cited to the Amended
Petition as it is the pleading which currently governs this dispute.

Sr., Randal Wayne Hilligoss, James Doyle Hilligoss, and Deborah Ann Beggs, the children of O.W. Hilligoss, a deceased brother, and Donna Hilligoss, Diana Hilligoss and Johnny Hilligoss, the children of a deceased brother, V.P. Hilligoss. "(Amended Petition ¶ 8).

7.  The Trust instrument provided: "The term "lineal descendant" is defined to identify all persons who have descended from a common ancestor, including those who are descendants by **birth or lawful adoption**. The term "descendant" as used in this instrument will mean and identify a lineal descendant." (emphasis added) (Amended Petition ¶ 17).

8.  V.P. Hilligoss is the deceased brother of Leonard Hilligoss and is the same "V.P. Hilligoss" referenced in the Trust Agreement. (Amended Petition ¶ 11).

9.  The surviving spouse of V.P. Hilligoss, Jonell Hilligoss, is omitted and not referenced in the Trust as a beneficiary. (Amended Petition ¶ 11).

10.  Trust beneficiary Donna Hilligoss is identified in the Trust as the daughter of V.P. Hilligoss, and is an expressly designated, non-lineal heir of the Grantor Leonard Hilligoss. (Amended Petition ¶ 8).

11.  Donna Hilligoss, a.k.a. Donna Robertson, the daughter of V.P. Hilligoss, died on December 3, 2003 approximately two (2) months after the Trust was established. (Amended Petition ¶ 9).

12.  Donna had one natural born child, Interpleader Defendant William Ray Robertson, and in approximately 1975 adopted Interpleader Defendant John Paul (Robertson) Hilligoss when he was 18 months of age. (Amended Petition ¶ 9).

13. This adoption resulted in the issuance of a second birth certificate for John Paul

11

changing his last name to "Robertson." (Amended Petition ¶ 9).

14.  Jonell Hilligoss, the surviving spouse of V.P. Hilligoss, thereafter legally adopted Interpleader Defendant John Paul Hilligoss in approximately 1988. (Amended Petition ¶ 10).

15.  Jonell Hilligoss' adoption resulted in the issuance of a third birth certificate for John Paul changing his last name to "Hilligoss."(Amended Petition ¶ 10).

16.  John Paul Hilligoss continued to reside with Donna Hilligoss after his adoption by Jonell Hilligoss, and for all intents and purposes continued to be treated as her own son at all times thereafter. (Amended Petition ¶ 12).

17.  The Trust provides, in relevant part: "The exclusion of other persons whether named herein or not who may be legal heirs of either Leonard Hilligoss or Opal Hilligoss is intentional. Any distribution from this trust to any beneficiary is subject to the general limitations prescribed in this trust instrument for a distribution to a beneficiary. If the person identified as a primary trust beneficiary of a designated trust is deceased at the time his/her trust becomes entitled to a distributive share of this trust, the share designated to pass to his/her trust will nonetheless pass to his/her lineal heirs, if any, and if not to the other beneficiaries named above in the proportionately (sic) as set forth above." (Amended Petition ¶ 16).

18.  Donna "Hilligoss" Robertson was deceased at the time she would have become entitled to a distributive share of the Trust; thus, by the express terms of the Trust, her lineal heirs were entitled to her distributive share. (Amended Petition ¶18).

19.  In September of 2010, the Trustees elected to make a substantial distribution of

Trust property to the beneficiaries of the Trust. (Amended Petition ¶19).

20.   The Trustees, on advice of counsel, noted that Interpleader Defendant William Ray Robertson is by natural birth a lineal descendant of Donna "Hilligoss" Robertson. Interpleader Defendant John Paul Hilligoss, while lawfully adopted by Donna "Hilligoss" Robertson, and raised by her as her child, was later adopted by Donna's mother who is not a beneficiary of the Trust, and who is excluded from being a beneficiary under the express terms of the Trust Agreement. (Amended Petition ¶19).

21.   Both Interpleader Defendants have expressed a legal and or equitable claim to Donna "Hilligoss" Robertson's distributive share of the Trust. (Amended Petition ¶20).

22.   The Trust has surrendered into the Court registry the distributive share allocated to Donna "Hilligoss" Robertson. [Doc. Nos. 27, 33].

## VI.  DISCUSSION

Interpleader Defendant Hilligoss claims that he is entitled to judgment as a matter of law because Oklahoma's Uniform Adoption Act, Okla. Stat. tit. 10, § 60.1[7] abolished all pre-existing differences between adopted and natural children.  Motion of Defendant Hilligoss, 5.  In particular, he relies on the Oklahoma Supreme Court decision in In re Flowers, 848 P.2d 1146 (Okla. 1993), in which the Court granted certiorari to the Oklahoma Court of Civil Appeals to answer the following two questions: (1) whether the termination of parental rights affects the adoptive daughter's right to inherit from her adoptive mother as a pretermitted

---

[7] In 1997 this statute was renumbered and codified as Okla. Stat. tit. 10, § 7501-1.1-1.3.

heir under Okla. Stat. tit. 84, § 132; and (2) whether parole evidence is admissible to ascertain the adoptive mother's testatorial intent.  Id. at 1149.  The Court held as follows:

> The passage of the Uniform Adoption Act (Adoption Act) abolished all pre-existing differences between adopted and natural children.  Because the clear language of [Adoption Act] provides that termination of parental rights does not affect a child's right to inherit from its parent, Hooper qualifies as a pretermitted heir ...."

Id. at 1149.  In Flowers, the facts were that Lois Flowers Hooper (Hooper) was adopted by Edna L. Rogers Flowers (Flowers, Testatrix) and that four years later Flowers' parental rights were terminated.  In re Flowers, 848 P.2d at 1148.  After the death of her adoptive mother, Hooper sought to share in her adoptive mother's estate as a pretermitted heir.  The trial court agreed that Hooper was a pretermitted heir and that nothing on the face of Flowers' will created an ambiguity allowing the introduction of extrinsic evidence.  Id. at 1149.  The Oklahoma Court of Civil Appeals affirmed, finding that an adoptive parent's parental rights could not be legally severed in 1943, and that extrinsic evidence was not admissible to establish Flowers' intent to disinherit Hooper.  Id.

The Oklahoma Supreme Court reversed and remanded the case for further proceedings.  The Court first found that Oklahoma's passage of the Uniform Adoption Act in 1957 abolished all pre-existing differences between adopted and natural children, and that because Okla. Stat. tit. 10A § 1-4-906(A)(6)[8] provides that the termination of parental rights does not affect a child's right to inherit from its parent, Hooper qualifies as a pretermitted

---

[8]At the time, this statute was codified as Okla. Stat. tit. 10, § 1132 and is cited as such in the Flowers opinion.

heir.  Id. at 1149-50.  It further found that the existence of an order terminating the testatrix's

parental rights *was* an extrinsic fact rendering the will ambiguous, and that parol evidence

was admissible to ascertain Flowers' intent.  Id. at 1152.

The parties in that case agreed that Hooper's status as an adopted child was a primary

issue in the case. Hooper argued that in the absence of a second adoption, the trial court

lacked the authority to sever her parental relationship with Flowers.  Flowers, 848 P.2d at

1149-50.

The Oklahoma Supreme Court noted that the Oklahoma Adoption Act abolished all

pre-existing differences between natural born and adopted children, and so the statute

regarding the effect of a termination of parental rights on a child's right to inherit was

determinative. The statute regarding termination of parental rights states: "The termination

of parental rights terminates the parent-child relationship, including ... [t]he parent's right to

inherit from or through the child. *Provided, that nothing herein shall in any way affect the*

*right of the child to inherit from the parent.*"  Okla. Stat. 10A, § 1-4-906(A)(6). The Flowers

court therefore concluded:

> Pursuant to the plain language of [the statute], termination of parental rights
> does not affect the right of the child to inherit from the parent.  Because
> Flowers died after the enactment of the Adoption Act abolishing all differences
> between natural and adopted children and because the clear language of [the
> statute] provides that termination of parental rights shall not affect a child's
> right to inherit from its parent, Hooper qualifies as a pretermitted heir...."

In re Flowers, 848 P.2d 1146, 1151 (Okla. 1993).  From this holding, Interpleader Defendant

Hilligoss argues that his subsequent adoption by Jonell Hilligoss did not affect his right to

inherit from his first adopted mother, Donna Hilligoss Robertson.  Continuing that logic, he argues that he is Donna's lineal heir and entitled to a part of Donna's distributive share of the Trust.

In response, Interpleader Defendant Robertson concedes that if the only issue was Donna Hilligoss' adoption of John Paul then the Uniform Adoption Act would give him the status of her lineal heir.  Interpleader Defendant Robertson's Response, 3.  However, he contends that the subsequent adoption by Jonell Hilligoss defeats his status as a lineal heir of Donna Hilligoss under the specific terms of the Trust.  Id. at 4.  Interpleader Defendant Robertson also distinguishes the decision in Flowers upon which Defendant Interpleader Hilligoss relies because the holding in that case was that a termination of an adopted parent's parental rights does not affect the right of the child to inherit from that adopted parent.  Interpleader Defendant Robertson's Response, 4.  He notes that in Flowers, there was no subsequent adoption and so no discussion about how a subsequent adoption would affect a child's right to inherit from former adoptive parents.  Id.  Instead, Defendant Interpleader Robertson cites two cases he claims to be on point with the issue raised herein: In re Estate of Moore, 25 P.3d 305 (Okla. Civ. App. 2001) and In re Talley's Estate, 109 P.2d 495 (Okla. 1941).

In Moore,  the issue was whether an adopted child may inherit from an adoptive parent whose parental rights were relinquished and terminated upon the child's second and subsequent adoption.  Id. at 306.  First, the Court acknowledged the holding in Flowers that the termination of parental rights does not in and of itself affect the right of the child to

inherit from the parent.  Id. at 306-07.  Second, it explained why an adopted child was able

to take from the estate of both his adopted and natural parent:

> Consanguinity is so fundamental in Statutes of Descent and Distribution that
> it may only be ignored by construction when courts are forced so to do, either
> by the express terms of the statute or by inexorable implication. An adopted
> child is, in a legal sense the child both of its natural and of its adopting parents,
> and is not, because of the adoption, deprived of its rights of inheritance from
> its natural parents, unless the statute expressly so provides.

In re Estate of Moore, 25 P.3d at 307 (citing Stark v. Watson, 359 P.2d 191, 193 (Okla.

1961)).

Interpleader Defendant Robertson argues that the Court in Moore relied on an

Oklahoma Supreme Court case in which it was specifically held that a subsequent adoption

will terminate any inheritance rights a child might have had from his previous adopted

parents:

> However, a subsequent adoption will terminate any inheritance rights a child
> might have had from a previous adoption. In In re Talley's Estate, 1941 OK
> 1, 109 P.2d 495, a teen-age boy was adopted by the Talleys. When the boy was
> nineteen, he was adopted by his natural father. In holding that the boy could
> not inherit from the Talleys' estate (the first adoptive family), the court stated:
>
>> neither in theory, practice nor common sense was petitioner the
>> adopted son of his first adoptive parents after his second
>> adoption. Having lost that relationship (a thing which by parallel
>> he could not entirely do, at least as to blood, as to his natural
>> parent) there was no longer any predicate upon which to base
>> the conclusion that he would thereafter inherit from his first
>> adoptive parents the same as if he had been their natural son. Id.
>> at 498.

In re Estate of Moore, 25 P.3d at 307 (quoting from In re Talley's Estate, 109 P.2d 495, 498

(Okla. 1941)).  In light of this case, the court in Moore stated:

> We hold that a child may inherit through his natural parents, even after he is adopted away from his natural family. And although an adopted child and adoptive parents enjoy all the rights of descent and distribution as if they were biological parents and child, a subsequent adoption will cut off any right the previous adoption might have conferred on either. If the rule in <u>Talley's</u> case is to be changed, it will be up to the Oklahoma Supreme Court.

<u>In re Estate of Moore</u>, 25 P.3d at 307.

Interpleader Defendant Hilligoss argues that the holding in <u>Moore</u> is not dispositive in this case for two reasons. First, he argues that the decision in <u>Moore</u> was by the Oklahoma Court of Civil Appeals, and is not binding precedent in this diversity case. Second, he argues that the Oklahoma Supreme Court was aware of <u>In re Talley's Estate</u> when it reached its decision in <u>Flowers</u>, which he apparently believes is inconsistent with the holding in <u>Talley</u>.

On the first point, Interpleader Defendant Hilligoss is correct. Since the present case is grounded on diversity jurisdiction, Oklahoma provides the substantive rules of law which govern the action and the Court is obligated to apply Oklahoma law as "announced by that state's highest court." <u>Blanke v. Alexander</u>, 152 F.3d 1224, 1228 (10th Cir. 1998). By Oklahoma statute, a decision of the Oklahoma Court of Civil Appeals is not binding or to be cited as precedent unless it has been approved by the majority of the justices of the Oklahoma Supreme Court for publication in the official reporter. Okla. Stat. tit. 20, § 30.5. Although the decision in <u>In re Estate of Moore</u> is published in the Pacific Reporter, it was done so by "Order of the Court of Appeals of Oklahoma, Division 3. April 5, 2001," rather than by the Oklahoma Supreme Court. <u>In re Estate of Moore</u>, 25 P.3d at 305.

However, the Court disagrees with Interpleader Hilligoss' second point. Although it

is true that the court in <u>Flowers</u> was clearly aware of its previous decision in <u>In re Talley's Estate</u>, neither its holding nor its discussion indicates that it was retreating from the law established in <u>Talley.</u> The <u>Flowers'</u> court's discussion of <u>Talley</u> began with this statement:

> Both parties argue that a primary issue in the cause concerns Hooper's status as an adopted child. [The beneficiary] asserts that the trial court had the authority to sever the parental relationship between an adopted child and his/her adoptive parents in 1943. Hooper insists that the trial court lacked authority to terminate the parent-child relationship absent a second adoption. However, this issue is not dispositive.

<u>Flowers</u>, 848 P.2d at 1149.  The <u>Flowers</u> court then continued its discussion of <u>Talley</u> in a footnote, noting that it had been determined therein that "the parental rights of adopted parents could be terminated." <u>Id.</u> at 1149 n. 8. It noted that <u>Talley</u> turned on the fact that an adoption may sever the natural parent's right to the child but never negate the child's blood relationship with its natural parent.  <u>Id.</u>  "The <u>Talley</u> court refused to find that an adopted child could inherit from prior adoptive parents in the same manner that an adopted child may continue to inherit from natural parents."  <u>Id.</u>

In <u>Talley</u>, the court relied in part on a case from Michigan, <u>In re Klapp's Estate</u>, 164 N.W. 381 (Mich. 1917). In that case, the Michigan Supreme Court held that a second adoption during the lifetime of the first adoptive parents extinguishes the right to inherit from such first adoptive parents.  <u>Id.</u> at 382.  Since that time, Michigan has continued to adhere to the rule in <u>In re Klapp's Estate</u>, and has in fact cited <u>Talley</u> with approval. <u>In re Carpenter's Estate</u>, 41 N.W.2d 349, 350 (Mich. 1950) As stated in <u>In re Carpenter's Estate</u>:

> While we are impressed by the views of [court below] which are in accord with the decisions in the majority of the States in which the question has

19

arisen, and we are not unmindful that the rights of a young and unprotected child should be carefully guarded if possible, we also realize the possible results were we disposed to veverse [sic] our decision in <u>Re Klapp's Estate</u>, <u>supra</u>, decided in 1917, in which a rule of property was stated. It is possible that the rule there pronounced has been relied upon numerous times in the more than 30 years that have since ensued. We are further not unmindful that in the many years since the decision was rendered the legislature has not seen fit to amend the law as construed by this court. We believe that we should adhere to our former decision and leave the question of whether the law should be changed to the discretion of the legislature.

<u>In re Carpenter's Estate</u>, 41 N.W.2d at 350.  Although the court in <u>In re Carpenter's Estate</u>

characterized the rule in <u>Klapp's</u> and <u>Talley</u> as a minority position, Corpus Juris Secundum

describes the law on the matter as representing a "division" of authority:

There is a division of authority as to whether a second adoption will affect the right of inheritance from the first adoptive parents.

In some jurisdictions, sometimes on the theory that an adoption does not deprive the child of the right to inherit from blood relatives, it is held that a second adoption does not deprive the child of the right to inherit from the parents first adopting it. This rule may apply even though the second adoption is by the child's natural parent, although there is also authority to the contrary. On the other hand, there is authority to the effect that a subsequent adoption destroys the right of the child to inherit from its first adoptive parents, and it has been so held notwithstanding recognition of the doctrine that an adoption does not deprive the child of the power to inherit from blood relations. The rule in other jurisdictions is declared to be that a twice adopted child cannot inherit from its first adoptive parents unless such parents have died prior to the second adoption, or unless it is readopted by its own natural parents.

2 C.J.S. <u>Adoption of Persons</u> § 161 (footnotes omitted) (noting Oklahoma as one of the states

adhering to the rule that a subsequent adoption destroys right of child to inherit from first

adoptive parents).

The <u>Flowers</u> court also approved of a  Court of Civil Appeals case in which the court

refused to apply the holding in Talley to a situation in which a father had "relinquished all rights" to his adopted children in a divorce decree because "*the adoptive father's parental rights were never formally vacated* and that the adopted children were entitled to inherit." Flowers, 848 P.2d at 1149, n. 8. (citing Matter of Estate of Baxter, 827 P.2d 184, 188 (Okla. Civ. App. 1992) (emphasis added)).[9]   Of course, the situation in Talley was clearly distinguishable from that in Baxter because Baxter was premised on the very fact that there was no valid subsequent adoption.

Accordingly, the Court concludes that there is nothing in Flowers that either re-examines the second adoption issue, or disapproves of the holding in Talley.  Although the decision in Moore is not of binding effect, the decision in Talley is, and this Court finds Moore's analysis of Talley to be both sound and dispositive of the issue raised herein.  As stated in Moore, if "the rule in Talley's case is to be changed, it will be up to the Oklahoma Supreme Court."  In re Estate of Moore, 25 P.3d at 307.  This Court's examination of the applicable statues and the decisions of the Oklahoma Supreme Court–including that in Flowers–reveals no indication that the Talley decision is no longer binding precedent.

Once Interpleader Defendant Hilligoss was adopted by Jonell Hilligoss, the parental

---

[9]In Baxter, the testator married and adopted his wife's two children. When the couple divorced, the terms of the divorce decree provided that the testator relinquished all rights to his adopted children and the wife was ordered to "adopt" them. The Baxter court found there was no authority for a legally created adoption relationship where the natural relationship still exists, and therefore found the supposed "adoption" by the children's mother to be of no effect.  Accordingly, it found that the adoptive relationship between the testator and his ex-wife's children was never formally vacated.

relationship between he and his former adoptive parent Donna no longer existed.[10] See 10 Okla. Stat. tit. 10, § 7501-1.3 ("Parent" means an individual who is the biological or adoptive parent of a child or who is legally recognized as a mother or father of a child. The term "parent" does not include an individual whose parental relationship to a child has been terminated"). Furthermore, after the final decree of adoption of Interpleader Defendant Hilligoss by Jonell Hilligoss "the relation of parent and child and all the rights, duties, and other legal consequences of the natural relation of child and parent ... thereafter exist[ed] between the adopted child and the adoptive parents of the child and the kindred of the adoptive parents." Okla. Stat. tit. 10, § 7505-6.5.  Accordingly, upon Jonell's adoption, Donna Hilligoss was no longer the adopted parent of Interpleader Hilligoss and so he was no longer her lineal heir.  Accordingly, he has no interest in the distributive share of Trust beneficiary Donna Hilligoss.

In summary, because Donna Hilligoss Robertson was deceased at the time she became entitled to a distributive share of the Trust, the express terms of the Trust provide that her lineal heirs are entitled to her distributive share.  The undisputed facts show that Interpleader Defendant William Ray Robertson was the sole lineal heir of Donna Hilligoss Robertson at that time and so he is entitled to her distributive share.

In light of the foregoing, Interpleader Defendant John Paul Hilligoss' Motion for Summary Judgment or Alternatively for Certification of Question of Law [Doc. 38] is hereby

_____

[10]There is no issue raised as to the legality of Jonell's adoption of John Paul, and neither party has presented any facts to indicate that the requisites for a valid adoption were not satisfied.

DENIED.   However, the Court finds that based on the undisputed facts, Interpleader

Defendant William Ray Robertson is entitled to judgment as a matter of law, and therefore

judgment in his favor shall be entered accordingly.   The Interpleader Plaintiffs are to inform

the Court when all of the  requisites for distribution have been satisfied.   Until that time, the

funds will remain in the registry of the Court.

**IT IS SO ORDERED this 16th day of April, 2012.**

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE